May it please the Court, Your Honor. Good morning. Christopher W. Katzenbach, appearing before Appellant Paul O'Nelson. The issue in this case, Your Honor, is whether or not the Court correctly granted summary judgment to the City concerning a case for discrimination based on the promotional exam given for the Lieutenant position. The question, I think, before the Court is whether there was sufficient evidence to take this case to the jury, as in all summary judgment cases. In this case, the question was whether or not there was a discrimination on the basis of age, gender, or race, or a combination of those factors. And we believe that in terms of the exam and the resulting promotional list that was created, we believe that for at least two reasons, that there was evidence sufficient to go to the jury. First, that the evidence that there were changes in the procedures used in this examination from the procedures used in prior examinations and the fact that those changes appeared to have benefited directly persons outside of Mr. Nelson's class, in both age, race, and gender. And two, the fact the background evidence of prior manipulations in the use of the promotional process, namely the unusual in the prior examination, the delay of requisitions, so again, persons outside of Mr. Nelson's class could achieve promotion. Second, we believe that the use of statistical evidence here was equally appropriate to looking at the test, both on its gross level, that is, the promotional examination as a whole, and also in particular in the interview portion of the test, which was conducted as a distinct feature of that test. In particular, the statistical evidence was, in our opinion, shocking in its level of indication that bias affected the process. It was also ruled inadmissible. It's unclear, yes. It was unruled and inadmissible, Your Honor, and we would challenge that as well because it was unquestionably disclosed in a disclosed pretrial. It was unquestionably disclosed and a copy of the report was given to the other side several months before expert disclosure. It was included at length in the pretrial. The case management statement that we submitted, again, long pretrial, it was discussed not only in terms of the content of the report, which was identical to the content of the report that was issued, but also in the nature of the trial, indicating that it would involve expert testimony on statistics, and that we, from both sides, the court had... If the discovery was already closed, was it still open at that point? It was still open at that point. In fact, the judge said, the judge, I'm sorry, Your Honor. Do you want to get a couple more? No, I think that's okay. I think I'll survive. The judge set a discovery cutoff date for experts. In other words, the court's case management order following that hearing set a discovery cutoff date for experts, which said simply expert discovery cutoff in May, which is approximately two months later, I believe, after we made the disclosures of the experts, and adopted the case management statement that we had submitted, presumably, as part of that order, at least in that's in form of what he said. So at that point, it appeared that the court had set this case up as part of a management order for a trial involving expert witnesses on the issues that we had identified specifically in our case management statement, including statistical evidence that we had discussed in our case management statement, which is the same identical statistical evidence based on the same report by Mr. Levosky that we produced previously to the city, and which we are, in fact, relying on here. In other words, the same evidence, the same statistical numbers, the same statistical analysis, the same ratios that we produced in terms of P factors, all of those factors were identified well beforehand. Did you send a letter or statement to opposing counsel saying this is my expert witness and here is what he or she is going to say? We provided them a copy of the report in January. And you said that was my expert witness? Yes, Your Honor. We said we prepared this expert witness. And we'd actually, and Your Honor, that also came as no surprise because during the civil service proceedings with the Civil Service Commission, we had previously told them about Mr. Levosky and that was part of the Civil Service Commission record that Mr. Levosky had been the expert that we'd retained. And that was a year before that. So what happened was Mr. Levosky was told, we identified Mr. Levosky, he submitted material to the Civil Service Commission. We then at the mediation provided the city both with the fact that we had, Mr. Levosky had now completed a report because at the Civil Service Commission he could not complete a report because he lacked the underlying data from which to create the plan. He didn't have the test results by individuals. We obtained that in discovery, all the details of the testing procedure. That was submitted to Mr. Levosky. He prepared a written report which we provided to them as part of the case management statement, sorry, as part of the mediation which we identified as the expert we retained. That report was then summarized in the case management statement in connection with we are going to be using an expert at trial. Why did the district court say you didn't comply with the rule then? If you did all this, it sounds like you complied with it. I believe, I'm not quite sure why the district court didn't do that. I believe that the district court wanted some further disclosure of a more formal nature. That's the only thing that I can think the district court wanted. Now, if the district court felt that it wanted a more formal designation, and I'm at fault for doing that, then I'm at fault for doing that. The only evidence that gets excluded is evidence that was not disclosed. In other words, under Rule 37, it is clear under the language of the rule that the only evidence that gets excluded is evidence that was not disclosed. And the nature of that disclosure is, I believe, how that evidence was disclosed would not justify an application of Rule 37 to material that was disclosed. If, for example, material had been disclosed in an entirely informal manner, just because counsel working together had exchanged documents and said, this is what's in our file, here's what's in your file, and both sides said, here's what's in our file, here are the various factors, we're not going to go through formal discovery or we're going to go limited formal discovery. Again, the fact of disclosure is what triggers the rule 37, not how it was disclosed. I think the rule is real clear that the exclusion of evidence can only be justified through the principle of nondisclosure and not through the principle of how a document was disclosed and how many ways it was disclosed. And we submit that applying that rule here, there was plenty of pretrial disclosure of this kind.  kind of disclosure to material that was disclosed, and if they misunderstood anything, then the solution would have been to try to fix whatever problem they felt they set, whether they wished to have a late deposition of Mr. Lepofsky, because for whatever reason, they certainly could have asked for that if they wished to. I'm not clear as to what you're telling Judge Seiler right now. Are you saying that you did comply with Rule 26 and the nine or so provisions of it? No, Your Honor. What I'm saying is that we complied with the provisions of Rule 26 by making a pretrial disclosure, but we did not do it in a sort of document entitled that way. And I will concede that we had not previously disclosed two factors. One, we did not disclose Mr. Lepofsky's hourly rate, and we did not give them a list of the names of cases he had previously been involved in. If we were at fault for this, we had previously provided them with a curriculum vitae to the City Civil Service Commission that was part of the file. So they already had that. So your answer is you didn't comply with Rule 26, however? The answer is we did not comply with those aspects of Rule 26, and if that means we didn't comply with Rule 26, the answer would be yes. But we would point out that Rule 37 allows exclusion of only material not disclosed. So that assuming that we didn't comply with that aspect of Rule 26, Rule 37 would still not permit, would still not authorize exclusion of evidence that was disclosed, however it was disclosed. So your argument sounded like it's a burden on the defendant to point out that you didn't comply and to ask you to specify wherein you didn't comply. Is that your argument? No, Your Honor. Our argument is that if there's anything we didn't do that caused them prejudice, then the court should have resolved. They should have identified the prejudice that that caused them, and we should have endeavored to fix it. It seems Judge White says the prejudice is they didn't have the opportunity to depose Lepofsky regarding the reliability of his opinion. Well, Your Honor, I find that hard to understand at that point, because in our case management statement we indicated that depositions of experts would take place. The report was disclosed and identified in January. The case management statement was filed, I believe, in March. The cutoff was mid-May. So if the question is opportunity, then it was certainly there. If they decided not to do it for whatever tactical reason they may have done, then I think if, on the other hand, the court felt, well, they should have another chance to depose Mr. Lepofsky prior to trial, then certainly that's an issue that could be raised with the court and something that could happen. In terms of summary judgment, though, I don't think that when we identify the issue pre-summary judgment as to Mr. Lepofsky's report, we identify the report, we provide a copy of the report, we identify the statistics in our case management statement, we state that there are going to be two expert testimonies, two experts testifying in trial, one for the defense, one for the plaintiff. We state that discovery of experts, that we anticipate depositions of the experts, and the court adopts that statement. It seems to me that the court has set a plan for trial, including that expert testimony. And if the city says, decides then not to depose Mr. Lepofsky, who they've known about for months, it seems to me straightforward in the sense of that that is an error. If they made it, they should ask for relief for or raise. I mean, that, you know, it seems to me that if they're complaining about the, they can't really be complaining about the lack of opportunity. They can only be complaining about that they had an argument that they were planning to make to say that we had failed to make some form of disclosure in some manner, and that they were seeking that for litigation advantage. I don't think if that was what they were doing, that that would constitute a form of prejudice that would be relevant for determining, that would be particularly supportive of their position here. If they're talking about, however, an opportunity to depose Mr. Lepofsky, they always had that opportunity at any point, just like we had the opportunity to discover, take deposition of their expert that they submitted as part of their summary judgment motion. And I would remind the Court that they, in fact, submitted an expert to provide background as to the development of the test and provide, and Mr. and provide how that test was developed, how that was complying with the various guidelines for testing. All of that was expert testimony. All of that was submitted by them. They don't claim to have ever made any disclosures of that expert along the lines of Rule 26, for the obvious reason, Your Honor, that it was apparent from day one, and particularly in light of the case management statement, that both parties knew who these experts were going to be and basically what they were going to be testifying to. If you lose on this issue of the expert witness, what's your best evidence to go forward on, or do you have enough? I think we have enough, Your Honor, because we have three, as we noted, we have three items. First, we have, and I think the lower court treated as it, I think, misanalyzed what we were saying and misunderstood, perhaps, what we were saying. What we were saying is not necessarily that they, we were saying that they changed procedures. In other words, the prior procedure had been to set a cutoff score for tests. In this case, after the written test portion was in, they looked at all the scores and decided to have everybody pass. The evidence is that that favored three, four individuals, in particular, with a lower score, one who was, two who were 38, one who was 44, one who was 29, all of whom were either female or minority as well. Secondly, we, ultimately, I believe they did. Did they get promoted during this time period we're talking about? I believe that that is true. They ultimately made it onto the final list, yes. The normal procedure had been to set a cutoff score. In fact, that's what the civil service rule says, that you set a cutoff score before the test, not after, or you don't look at the test results and then do it. The second point was that they changed the composition of the interview panels that, historically, in the past practice had been that when you have the oral interview panels, you have higher ranks on those panels. For example, for a sergeant examination, you'd have lieutenants or above, that the, in this case, they all had lieutenant-level personnel on the interview panels. I'm not sure I understand the significance of that. Well, I think, Your Honor. That's why it's significant to have lieutenants instead of captains. Well, the past practice had been to have a higher-level rank. They changed it for this test. The inference is that they were changing it to affect the test results. There were no captains for those panels. The inference is, my client did particularly poorly on the oral interview portion, while he did very, he did, you know, well on the practical examination. The panel that was ended up. What's the logical basis for the inference you're asking us to draw? The inference is, Your Honor, that we have a procedure. I know what the inference is. I'm just asking for the logical basis. It sounds to me like posing a question to a post hoc ergo proctor hoc. Because of this, therefore. No, Your Honor. I think it's this. I think it's more differently. I think the logical basis is to say, is looking at who benefits from something. In other words, you look at how a change affects a process and say, well, who benefits from that change? So that if the change. But your argument is, because he didn't benefit, it was because of the change. No. My argument is, because other people, not in his classifications, benefited, that that's the inference that the change was intended to benefit them. And I'm having trouble with the logic of that. Well, Your Honor. How does the change affect the result? Well, Your Honor, take the cutoff score change. Well, let's talk about the lieutenants and captains. Right. It meant that a panel, that the panel was actually composed, as he indicated, of individuals who were younger, mostly younger and female and minority. The implication is that that panel choice was deliberate. The logical inference is a sort of... What is the evidence that that was deliberate? The evidence that that was deliberate, Your Honor... In order to affect the outcome. Right. The evidence is two. One, it's a change from past practice. The past practice had been to have superior ranks. And two, there were available captains, that is a superior rank, that were available on the same day that those panels were available. Namely, that there were captains that were handling the practical part of the examination. So that there was no logical reason why superior ranks couldn't have been on the interview. In other words, it couldn't have been a more mixed panels. And three, I suppose, the other third inference from that is, that although my client did very poorly on the oral interview, he did average or better on the practical examination, which was held approximately two hours earlier. So there's those inferences that indicate that that was a manipulation to change the result. Finally, there's the evidence from the prior examination, which the court excluded as irrelevant, but which we submit is a case where past practice is relevant in a discrimination case,  and that's the situation where, again, the city had deviated from past practice by delaying promotions from October, when they would normally be made, until the following year. And again, that benefited, that allowed younger minorities and females to achieve a time and grade that would allow them to be promoted over my client to available open lieutenant positions. To put it, just to describe the facts briefly, the lieutenant positions for which my client was top of the list were approved in July. They would normally have been filled in October. They were not filled in October. They were not filled until January. But in January, certain other individuals achieved a time and grade that would allow them to take those promotions over my client, or allow them to be promoted over my client. That, again, suggests a manipulation of the process. And again, raises the question, who benefits from that change in practice? And if you look at that, the influence of discrimination arises. And the fact that it happened in a prior examination, and the fact that it may involve issues which are evidentiary rather than substantive, doesn't change the fact, because time, older incidents can be looked at for purposes of determining motive under established law. Court refused to do that. Lower court refused to do that. And in that sense, we believe the court erred in not even considering that evidence. It should have considered it. And we believe that when this evidence is put together, it is sufficient to go to a jury. I have about a minute, I believe. Why don't you save your minute? Thank you very much. May it please the Court. My name is Jonathan Rolnick. I'm a deputy city attorney, and I'm here representing the city and county of San Francisco. The district court correctly determined that summary judgment was appropriate in this case, and there was insufficient evidence that the plaintiff offered to avoid that ruling. Mr. Nelson, in 1999, took a promotional exam to become a lieutenant in the city's sheriff's department. There were 44 other applicants. They took a test that was developed and administered by an outside contractor, Cooperative Personnel Services. They developed a content valid test for us that had three components, a written, a practical, and an oral. At the end of that examination, an eligibles list was created. Mr. Nelson was ranked 29th out of the 44 candidates on the list. He was 21 as the list was numbered, since there were several candidates who shared the same score. Of those who ranked higher than Mr. Nelson, 21 were 40 years or older. Of those 21, 9 were over the age of 45, 13 were over the age of 44. Five were older than Mr. Nelson. Thirteen promotions were made from that list in rank order. All had higher scores on the examination than Mr. Nelson. Eleven were over the age of 40. Two were older than Mr. Nelson. There were four white candidates who received promotions and nine minorities. Mr. Nelson, in his deposition, indicated he thought he was a shoo-in for one of these promotions. When he didn't get one, he looked around and he saw some of the people who got promotions were a different age, he assumed, than he was, that they were not all men and that some were not all white, or some were not white, they were not all white. And so Mr. Nelson came to the conclusion, they're different than me. The only reason I didn't get this job is because they're different than me and somebody discriminated against me. And this reminded him to go back and look at the interview, and he had an interview in which he did poorly, and the basic argument he presents to you is, but for the fact that the panel was composed of two white women and one African-American man, if I'd had a panel that looked more like me, I would have gotten a promotion. And that's all the evidence there is. And that is not sufficient to avoid summary judgment in this case. These were all lieutenants that interviewed him? There were lieutenants who interviewed him for this part of the examination, correct. Can we infer that if he'd been interviewed by captains, they would not have been the same mix? I don't think there's any basis on which to draw that inference, Your Honor. By the way, and the record reflects this, all of the assessors who did these assessments were from outside the city and county of San Francisco. They were drawn and trained by CPS in how to do the assessment process. CPS prepared the questions. CPS prepared follow-up questions. CPS trained them about how to score applicants on their response to the questions. The individuals who did the assessment, as well as the other oral component of the examination, which was the practical exam, came from law enforcement agencies not associated with the city and county of San Francisco. These were not individuals from the sheriff's department or from the city's police or fire department. Judge White, in his order, said that the city didn't have the opportunity to depose Lepowski. Is that correct or not? That is correct. And I think there are a couple of misconceptions here about what happened with respect to Mr. Lepowski. The disclosure that Mr. Nelson's counsel points to was a report that, if you look at the record, begins at page 7 of the excerpt of records, identifies it as a preliminary report from a consultant, Mr. Lepowski. This was provided during a confidential mediation between the parties. Rule 26 is clear. Rule 26 places the burden on the party who wants to offer an expert testimony to disclose it. There was a scheduling order in this case that set a March date for disclosure of expert witnesses. There was no disclosure. Are you saying the city and county didn't know that this was going to be the expert? The city and county, based on what was provided in the mediation and what was said in the status conference statement, knew that Mr. Nelson was exploring the possibility of using an expert witness. But under Rule 26, until that's disclosed, we're just divining his intentions. The rules also provide for parties to retain consultants who are not testifying experts. And oftentimes, parties will wait until the last minute to decide whether or not they want to use an expert. And the burden is not, as Mr. Nelson's counsel seems to imply, on the city to rectify any confusion. It's his obligation to send us an official disclosure, identifying the individual, providing a copy of his final report, not a preliminary report, as well as all the other information that's required under Rule 26. Once that happens, then the city knows that an expert is going to be testifying. When did you finally find that out, that he was going to use Lepowski? When he offered Mr. Lepowski's report in his opposition to our motion for summary judgment. There was no prior disclosure that I was going to use, that Mr. Nelson was going to use Mr. Lepowski as a testifying expert at trial. This was a case of, whether it was intentional or not, it was sandbagging. It was, it took, the purpose of these discovery rules is to take the guessing game out of this. And it's a very simple rule. And the burden is on the party offering the expert to disclose that information. Should the district court have taken some other sanctions, a little less drastic, like holding off the motion for summary judgment so that he could disclose this was his expert and do all these other things? Perhaps the court could have done that, but the city's position is that it was incumbent upon Mr. Nelson to ask for that relief. It was not incumbent upon the city. He never asked for it. He never asked for it. The city's position is, if he thought that he had missed this deadline and failed to do a disclosure, it was incumbent upon him to bring some sort of motion before the court saying, I apologize, I erred, we still have time before trial, I need this expert's testimony to oppose the summary judgment. And I would ask leave to provide a supplemental disclosure and to provide the city with whatever opportunity it needs to conduct discovery. That did not occur here. Again, the burden was on Mr. Nelson and his counsel, not on the city. One other thing on this issue, the city did not offer an expert witness in its moving papers. The city did offer a declaration from Mr. Groover. He was a percipient witness. Mr. Groover is the man who, along with his partner, developed the test for CPS. And he was disclosed in the city's initial disclosures in this case. He was not offered as an expert witness. He was offered as a percipient witness who was involved in the process here. I think even if you use these statistics, even if the court was incorrect as to whether or not that evidence was admissible, the same outcome results. The statistics are not enough to bring Mr. Nelson over that hurdle once the city offered its legitimate non-discriminatory reasons for his disappearance. It's not sufficient to show specific and substantial evidence that the decisions here were motivated by discriminatory animus. This was a small sample size, and there was no other evidence that he offered, no other competent evidence from which to draw an inference that discrimination was afoot in this process. With each of the items, and it's in our brief that he raises with respect to past practice, there was no evidence of a delay between the 95 exam and the 99 exam. The only evidence is that there was an exam in 95 and there was an exam in 99. Delay is how Mr. Nelson chooses to characterize it, but he offers no evidence from which to draw an inference that the city intentionally waited that four-year period to provide an exam for lieutenants. That's simply his characterization of the exam. With respect to his argument about who benefits, everybody benefits. Everybody who has an opportunity to take that next exam benefits. There's been no evaluation as to who benefits. There was no statistical information or other discovery as to the universe of people who benefited by the fact that an exam didn't take place until 99 rather than having it in 97 or 96. Again, the idea of a delay is simply a characterization. There is no evidence to draw an inference for the purpose of discrimination based on any basis. With respect to the cutoff score, again, wrong. The civil service rule, it's in the excerpt of records, supplemental excerpt of records. A cutoff score is made once and then not changed. There's no evidence that the cutoff score in this case was ever changed. A cutoff score was established, and the cutoff score, they stuck with it. The interview panel. Again, none of the people on the interview panel were from the city and county, and there is no logical way to draw an inference that we included lieutenants on the interview panel as a way of furthering some discriminatory process. They weren't employees of this department? They were not employees of the sheriff's department. They were not employees of the city and county of San Francisco. They came from other law enforcement agencies. Correct. They were selected by CPS. They were trained by CPS. And there's no evidence that CPS went out and found those people and said, well, let's find lieutenants because we're more likely to find younger people, and we're more likely to find women in those ranks, and we're more likely to find minorities in those ranks. There's no evidence to support that kind of inference. And finally, with respect to the so-called background situation, the court properly excluded that under Morgan and this court's decision in Lyons. They were dissimilar. This was the time-barred issues he has regarding his failure to get a promotion based on the 1995 examination. Morgan and Lyons recognized that where there's conduct that's of a similar nature, although it may be time-barred and is not relevant for purposes of or it's not liability-producing, it may be relevant to actions that are within the statutory time period. His complaints with respect to 95 are not, has nothing to do with the examination process in 95, has nothing to do with the interview panels in 95, has nothing to do with his rank on the list. His argument is, and it's unsupported by competent evidence, is somebody promised me I'd get the next promotion. He doesn't say who. He doesn't say when. He doesn't say where. He says the city didn't issue requisitions. He doesn't offer any competent evidence as to why the city did or didn't issue requisitions for the next position. And later on, other people who were different than him got those promotions. That is entirely different from his, the essence of his claim here. And the essence of his claim here is really focused on the ranking or the score provided by this one panel. His complaint here has to do with the process of the examination. Because, of course, he can't argue with respect to the ranking, because the city went down in rank order here, and they did not reach Mr. Nelson. So the court correctly decided that that information was not relevant to the type of discrimination, the discriminatory action that Mr. Nelson focuses in on this case. And so the court was correct in all respects in the summary judgment motion that excluding the evidence and determining that there was insufficient evidence to allow this case to go forward to trial. Thank you. Thank you. Mr. Katzenbeck, you have about a minute left. You get the last word. I'd like to direct your attention to the case management statement we supplied in February. It states, our excerpt of record, page 20, starting at line 12, 13, both sides have conducted statistical analysis of the data and have made various disagreements as to the validity of the statistical analysis used by the other side. Plaintiff's statistical analysis supports his claim of discrimination as follows. And then follows two paragraphs where we quote material, where we basically summarize material in the Lepofsky report exactly as we presented in the briefs here and exactly as it's put in the report. Lepofsky's name in there? Mr. Lepofsky. Is his name in this case management statement? No, it is not, Your Honor. He does that as the name of the person, however, we identified. Then the court will continue on the legal issues and disputes. The parties dispute whether the statistical evidence is sufficient to prove discrimination. The bottom of that page, that's page 21 of the excerpt of record, it says, defendant desires to take plaintiff's deposition and plaintiff anticipates depositions of the statistical experts. Your time is up there, Mr. Katzenbeck. And, Your Honor, we have the trial thing as well. And I ask the court to look at Mr. Gruen's declaration and determine whether or not you think that is an expert declaration who validates the fairness of the procedures used. Thank you. Mr. Olick, thank you. The case argued is submitted. And finally, the last two cases on the calendar this morning, 04-15528, phonometrics versus hospitality franchise system, and 04-16212, Downing versus Del Papa. Both of those cases are submitted on the briefs at this time. We'll stand in recess. Thank you.
judges: Alarcon, Siler , Silverman